<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Customs & Border Protection (Customs) of the Department of Homeland Security and the Department of Commerce (collectively the "United States"); Ameri-Source Specialty Products, Inc., Ameri-Source Holdings, Inc., Ameri-Source International, Inc., SMC Machining, LLC, Ajay Goel, and Thomas Diener (collectively the "Defendants"); and Graphite Electrode Sales, Inc. (Relator) (hereafter collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.  Defendants (as described more fully below) are in the business of selling graphite and metal items to a variety of industries. As part of that business, the Defendants purchased and imported, or were involved in the purchase and import of, small-diameter graphite electrodes. Small-diameter graphite electrodes are columns of synthetic graphite with diameters of around 16 inches or less used as fuel in electric arc and ladle furnaces, such as those used in steel manufacturing.

1.  Ameri-Source Specialty Products, Inc. is a Pennsylvania S-corporation with its headquarters in Bethel Park, Pennsylvania that purchases, imports, and sells small-diameter graphite electrodes and steel products.

2.  Ameri-Source Holdings, Inc., a Pennsylvania corporation with a registered address in Bethel Park, Pennsylvania, is the real estate holding company for its parent, Ameri-Source Specialty Products, Inc.



3. Ameri-Source International, Inc. is a Delaware corporation with a registered address in Pittsburgh, Pennsylvania that purchases, imports, and sells small-diameter graphite electrodes. Ameri-Source International, Inc. was the importer of record for the shipments of small-diameter graphite electrodes listed on Attachment A, and as such, was responsible for the submission of import documents to Customs and for the payment of any duties owed on these imports, including antidumping duties.

4. SMC Machining, LLC is a Pennsylvania corporation with a registered address in McMurray, Pennsylvania that sometimes operates under the name SMC, Inc. SMC Machining, LLC was incorporated at the direction of Ajay Goel, but has since been sold to an employee of the other Defendant companies. SMC Machining, LLC purchases, imports, and sells small-diameter graphite electrodes on behalf of Ameri-Source Specialty Products, Inc.

5. Ajay Goel operates and serves as a corporate officer of Ameri-Source Specialty Products, Inc., Ameri-Source Holdings, Inc., and Ameri-Source International, Inc. Goel directed the decisions regarding Defendants' importation process for small-diameter graphite electrodes.

6. Thomas Diener operates and serves as a corporate officer of Ameri-Source Specialty Products, Inc., Ameri-Source Holdings, Inc., and Ameri-Source International, Inc. Diener directed the decisions regarding Defendants' importation process for small-diameter graphite electrodes.

B.  On April 1, 2013, Relator filed a *qui tam* action under seal in the United States District Court for the Western District of Pennsylvania captioned *United States ex rel. Graphite Electrode Sales, Inc. v. Ameri-Source Holdings, Inc., Ameri-Source Specialty Products, Ameri-Source International, Inc., AmeriSteel, Inc., SMC, Inc., Special Machining Company, Ameri-Source Engineering, India Private Ltd., Tom Diener, and Ajay Goel,* Civil Action No. 13-0474, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). The *qui tam* complaint in the Civil Action alleged, among other things, that with respect to imports of small-diameter graphite electrodes, Defendants misrepresented the merchandise being imported or the country of origin of that merchandise to avoid paying antidumping duties. Relator further alleged in the Civil Action that defendants made or caused to be made false statements to avoid paying penalties for failure to pay duties, and entered into a conspiracy to avoid both duties and penalties. Specifically, Relator alleged that Defendants wrongfully avoided paying millions of dollars in customs duties to the United States by knowingly making, or causing to be made, materially false statements regarding the country-of-origin of small diameter graphite electrodes and/or using the incorrect tariff classification code to describe the merchandise on Customs forms. The United States is partially intervening in the Civil Action for purposes of settlement.

C.  The United States contends that with respect to the imports of Chinese-made small-diameter graphite electrodes identified in Attachment A, Defendants knowingly engaged in the following conduct to evade paying antidumping duties owed to the United States:

1. Defendants misrepresented, caused to be misrepresented, or conspired to misrepresent the diameter of the graphite electrodes as larger than they were so that they would not appear to meet the definition of small-diameter graphite electrodes;

2. With the exception of the first import listed on Attachment A, Defendants declared, caused to be declared, or conspired to declare, the graphite electrodes under an incorrect tariff classification so that they would not appear to be small-diameter graphite electrodes; and

3. Defendants failed to declare and pay, caused others to fail to declare and pay, or conspired to fail to declare and pay antidumping duties owed to the United States.

The United States further contends that the conduct described in the Paragraph gives rise to civil claims against Defendants. The conduct described in this Paragraph is referred to below as the "Covered Conduct."

D. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

E. Except to the extent admitted by Ameri-Source International, Inc. in its guilty plea, this Settlement Agreement is not an admission of liability by Defendants; nor is it a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendants shall pay to the United States $3 million (Settlement Amount) no later than ten (10) business days after the Effective Date of this Agreement. Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the office of the United States Attorney for the Western District of Pennsylvania.

2. Conditioned upon the United States receiving the Settlement Amount from Defendants and as soon as feasible after receipt, the United States shall pay $480,000 to Relator by electronic funds transfer.

3. Subject to the exceptions in Paragraph 5 (concerning excluded claims), and conditioned upon Defendants' full payment of the Settlement Amount, and subject to Paragraph 15 (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement), the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Tariff Act of 1930, as amended; and common law fraud.

4. Subject to the exceptions in Paragraph 5, and conditioned upon Defendants' full payment of the Settlement Amount, and subject to Paragraph 15 (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement), Relator, for itself and for its heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5. Notwithstanding the releases given in Paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g. Any liability for failure to deliver goods or services due;

    h. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

    i. Any liability of individuals other than Thomas Diener and Ajay Goel.

6. Relator and its heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and its heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.  Notwithstanding the releases given in Paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, Relator, for itself, and for its heirs, successors, attorneys, agents, and assigns, does not release, and specifically reserves, its claims against Defendants under 31 U.S.C. § 3730(d) for expenses, attorney's fees, and costs.

8.  Defendants have provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Defendants warrant that the Financial Statements are complete, accurate, and current as of the Effective Date of this Agreement. If the United States learns of asset(s) in which any Defendant had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by any Defendant on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated combined net worth set forth in the Financial Statements by $200,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit based on the Covered Conduct against any Defendants, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred

percent (100%) of the value of the net worth of the Defendant or Defendants previously undisclosed. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

9. In the event that the United States, pursuant to Paragraph 8 (concerning disclosure of assets) opts to rescind this Agreement, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to the Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on April 1, 2013.

10. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have

asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Civil Action and the United States' investigation and prosecution thereof.

12. Defendants fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the Civil Action and the Relator's investigation and prosecution thereof.

13. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of any Defendant, and its (or his) present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement and any related plea agreement;

(2) the United States' audit(s) and civil and criminal investigations of the matters covered by this Agreement;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigations in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement and any plea agreement;

    (5)  the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

  b.  Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

  c.  Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by any Defendant or any of its subsidiaries or affiliates from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

14. Defendants warrant that they have reviewed their financial situations and that they, individually and collectively, are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which any Defendant was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

15. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, any Defendant commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of any Defendant's debts, or seeking to adjudicate any Defendant as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for any Defendant or for all or any substantial part of any Defendant's assets, each Defendant agrees as follows:

    a. Each Defendant's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take

the position in any such case, proceeding, or action that: (i) any Defendant's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) any Defendant was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to each Defendant.

    b. If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 4 and 5, above. Each Defendant agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 180 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on April 1, 2013, and (iii) the United States has a valid claim against Defendants, jointly and severally, for the Covered Conduct in the amount of $6,500,000,

and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

    c.    Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

16.    This Agreement is intended to be for the benefit of the Parties only.

17.    On or after the Effective Date of this Agreement, the United States will file a notice of intervention in the Civil Action with regard to the Covered Conduct, and, upon receipt of the payment described in Paragraph 1, above, United States and Relator shall promptly sign and file in the Civil Action a Joint Notice of Dismissal of the Civil Action pursuant to Rule 41(a)(1). The dismissal shall be with prejudice to the Relator except for those claims against Defendant which are expressly and specifically reserved by Relator under Paragraph 7, and without prejudice to the United States except as to the Covered Conduct.

18.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except that Relator expressly reserves its rights to expenses, attorneys' fees, and costs pursuant to Paragraph 7 of this Agreement and under 31 U.S.C. § 3730(d).

19.    Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

20.    This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Pennsylvania. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all

Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

22. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23. This Agreement may be executed in counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement.

24. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

25. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

26. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[signatures follow]

## THE UNITED STATES OF AMERICA

DATED: Feb 9, 2016        BY: /s/ Christelle Klovers
                              CHRISTELLE KLOVERS
                              Trial Attorney
                              Commercial Litigation Branch
                              Civil Division
                              United States Department of Justice


DATED: 9 February 2016    BY: /s/ Paul E. Skirtich
                              PAUL E. SKIRTICH
                              Assistant United States Attorney
                              Western District of Pennsylvania


DATED: _____            BY: _____
                              JEANNE E. DAVIDSON
                              Director
                              Commercial Litigation Branch
                              Civil Division
                              United States Department of Justice


DATED: _____            BY: _____
                              STEPHEN C. TOSINI
                              Senior Trial Counsel
                              Commercial Litigation Branch
                              Civil Division
                              United States Department of Justice

**THE UNITED STATES OF AMERICA**

DATED: _____     BY: _____
                               CHRISTELLE KLOVERS
                               Trial Attorney
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice


DATED: _____     BY: _____
                               PAUL E. SKIRTICH
                               Assistant United States Attorney
                               Western District of Pennsylvania


DATED: 2/9/16              BY: _____
                               JEANNE E. DAVIDSON
                               Director
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice


DATED: Feb 9, 2016         BY: _____
                               STEPHEN C. TOSINI
                               Senior Trial Counsel
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice

15

GRAPHITE ELECTRODE SALES, INC. - RELATOR

DATED: 2/4/16    BY: _____
                     KEITH KEARNEY
                     President
                     Graphite Electrode Sales, Inc.

DATED: 2/5/16    BY: _____
                     JAMES F. BARGER, JR.
                     Frohsin & Barger, LLC
                     Counsel for Graphite Electrode Sales, Inc.

DEFENDANTS

DATED: 2/5/2016        BY: _____
                            AJAY GOEL

DATED: 2/5/2016        BY: _____
                            THOMAS DIENER

DATED: 2/5/2016        BY: _____
                            THOMAS DIENER
                            President
                            Ameri-Source Specialty Products

DATED: 2/5/2016        BY: _____
                            THOMAS DIENER
                            President
                            Ameri-Source Holdings, Inc.

DATED: 2/5/2016        BY: _____
                            THOMAS DIENER
                            President
                            Ameri-Source International, Inc.

DATED: 2/5/2016        BY: _____
                            VILAS BHAMRE
                            President
                            SMC Machining, LLC

17

DATED: 2/9/16    BY: _____
THOMAS J. FARRELL
Counsel for Defendants Ajay Goel, Ameri-Source Specialty Products, Ameri-Source Holdings, Inc., Ameri-Source International, Inc., AmeriSteel, Inc., and SMC Machining, LLC

DATED: 2/9/16    BY: _____
MEAGAN F. TEMPLE
Counsel for Defendant Thomas Diener

18

ATTACHMENT A

|    | Entry Number   | Entered Date | Entered Value |
|----|----------------|--------------|---------------|
| 1  | 344-0780937-4  | 12/14/09     | $50,896       |
| 2  | 344-0792032-0  | 8/17/10      | $200,380      |
| 3  | 344-0794349-6  | 10/19/10     | $75,225       |
| 4  | 344-0795113-5  | 11/4/10      | $54,215       |
| 5  | 344-0798926-7  | 2/2/11       | $52,180       |
| 6  | 344-0799171-9  | 2/7/11       | $52,622       |
| 7  | 344-0799580-1  | 2/17/11      | $79,650       |
| 8  | 344-0799877-1  | 2/23/11      | $54,870       |
| 9  | 344-0802911-3  | 4/27/11      | $56,558       |
| 10 | 344-0803934-4  | 5/18/11      | $54,292       |
| 11 | 344-0805032-5  | 6/9/11       | $56,103       |
| 12 | 344-0807621-3  | 8/2/11       | $116,289      |
| 13 | 344-0812365-0  | 11/12/11     | $165,424      |
| 14 | 344-0812902-0  | 11/26/11     | $135,737      |
| 15 | 344-0817485-1  | 3/12/12      | $134,549      |